IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HOSTS DESTINATION SERVICES, LLC          *
2065 E. Windmill Lane, Suite 154,
Las Vegas, Nevada 89123                  *

                Plaintiff,          *          Civil Action No.:

vs.                                      *

TAYLOR HUTCHISON                         *
(a/k/a Christian Taylor Hutchison Villagomez)
2221 Stokes Lane                         *
Alexandria, Virginia 22307
                                         *
and
                                         *
PATRICK ANTHONY VILLAGOMEZ
2221 Stokes Lane                         *
Alexandria, Virginia 22307
                                         *
and
                                         *
DISTRICT VENUES LLC
680 Water Street, S.W.                   *
Washington, D.C. 20024
                                         *
    <u>SERVE ON</u>:
                                         *
    Patrick Villagomez, Registered Agent
    680 Water Street, S.W.               *
    Washington, D.C. 20024
                                         *
                Defendants.
                                         *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF</u>

Plaintiff Hosts Destination Services, LLC, by its attorneys, hereby files this Complaint for

Injunctive Relief and Damages against Defendants Taylor Hutchison (a/k/a Christian Taylor Hutchison

Villagomez), Patrick Anthony Villagomez, and District Venues, LLC, and states as follows.

## INTRODUCTION

This lawsuit arises out of a well-planned scheme between wife and husband Defendants Taylor Hutchison (a/k/a Christian Taylor Hutchison Villagomez) ("Hutchison") and Patrick Anthony Villagomez ("Villagomez") to defraud Plaintiff Hosts Destination Services, LLC ("Hosts"), an event-planning agency, and to divert millions of dollars in event-planning business away from Hosts to District Venues LLC, an entity Hutchison and Villagomez set up to compete with Hosts without Hosts' knowledge while Hutchison was employed full-time by Hosts as Hosts' Director of Sales for the Washington/Baltimore region.  Defendants' scheme involved diverting event-planning projects in the recently redeveloped Wharf located on the District of Columbia waterfront (hereinafter, the "Wharf"), a highly desirable location where numerous lucrative corporate and large private events have taken place and will continue to take place in the future.

At the same time that Hutchison was employed by Hosts as its Director of Sales for the Washington/Baltimore region, Hutchison, along with Villagomez, formed, owned and operated District Venues LLC ("District Venues"), an event-planning agency that was used to divert event-planning business from Hosts, to wrongfully extract consulting payments and commissions from the Wharf and Hosts and others, and to compete with Hosts for event-planning work at the Wharf and elsewhere. Through District Venues, Defendants supplied event-planning services to various clients at the Wharf, to the detriment of Hosts, and thereby earned substantial commissions, even as Hutchison was receiving a substantial full-time salary and commissions from Hosts to generate event-planning work for Hosts.

With the knowledge and cooperation of Villagomez, Hutchison intentionally and fraudulently hid from Hosts her identity as a founder and owner of District Venues.  Hutchison brazenly led Hosts to enter into a contractual relationship with District Venues based on the false pretext that District Venues was either a division of the Wharf, or an unrelated third party acting as exclusive agent for the Wharf.

Hosts seeks both compensatory and punitive damages against Defendant Hutchison for, among other causes, breach of her duty of loyalty as an employee of Hosts, breach of her employment contract with Hosts, and breach of a business protection agreement she signed for the benefit of Hosts.  Hosts

- 2 -

seeks both compensatory and punitive damages against all Defendants for tortious interference with prospective advantage, intentional and negligent misrepresentation, fraudulent concealment, civil conspiracy, and unjust enrichment.

In addition to monetary damages, Hosts seeks an injunction from this Court requiring Defendants to provide an accounting of all transactions and payments received by the Defendants from the Wharf during Hutchison's employment by Hosts, to disgorge all money received and profits earned from event-planning services provided by any of the Defendants at the Wharf or elsewhere during Hutchison's employment by Hosts, and to offer to assign to Hosts all executory contracts which the Defendants currently have for event-planning work in the future.

## PARTIES

1.      Plaintiff Hosts Destination Services, LLC ("Hosts") is a Delaware limited liability company with its principal place of business located at 2065 E. Windmill Lane, Suite 154 Las Vegas, Nevada 89123.

2.      Defendant Taylor Hutchison (a/k/a Christian Taylor Hutchison Villagomez) is a resident of the state of Virginia and resides at 2221 Stokes Lane, Alexandria, Virginia 22307.

3.      Defendant Patrick Anthony Villagomez is a resident of the state of Virginia and resides at 2221 Stokes Lane, Alexandria, Virginia 22307.

4.      Defendant District Venues LLC ("District Venues") is a District of Columbia limited liability company with its principal place of business located at 680 Water Street, S.W., Washington, D.C. 20024.

## JURISDICTION AND VENUE

5.      This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states, *i.e.*, a citizen of Delaware and Nevada (Hosts), and citizens of the District of Columbia (District Venues) and Virginia (the individual defendants).

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b)(2).

6549625 4 35482/139325 12/03/2018

## FACTS AND ALLEGATIONS

A.    Hosts Hires Hutchison as Director of Sales for Hosts' Washington/Baltimore Region.

7.     Hosts is an event-planning agency that plans and produces large corporate meetings and events throughout the United States and abroad.  In addition to Hosts' principal place of business in Nevada, Hosts has several locations in the United States, including executive offices in the District of Columbia and Maryland.

8.     Pursuant to an offer letter dated August 7, 2015, Hosts hired Defendant Hutchison as Director of Sales for Hosts' Washington/Baltimore region.  Hutchison's job responsibilities included leading the sales generation process and sales staff for Hosts' Washington/Baltimore region.   Hutchison had two Hosts employees reporting directly to her.  Hutchison was paid a substantial salary and commissions for events Hutchison generated for Hosts.  Hutchison earned benefits, including paid time off, a company-sponsored 401k plan with company matching contributions, a company-sponsored health insurance plan with the company paying a large portion of the premiums, company-paid life insurance, and disability insurance.  A copy of Host's employment offer letter to Hutchison is attached as Exhibit 1, with her starting salary redacted.

9.     As a condition of Hutchison's employment at Hosts, Hosts required Hutchison to sign a Confidentiality and Business Protection Agreement (the "BPA"), a copy of which is attached as Exhibit 2.  The BPA contained a number of restrictions on Hutchison's conduct which are relevant to this action.

10.     First, the BPA restricts Hutchison during the term of her employment with Hosts and for one year thereafter from directly or indirectly soliciting any Hosts' client or prospective client for the provision of Event Services, or providing Event Services to any Hosts' client or respective client.  BPA at ¶4. These restrictions apply to clients or prospective clients 1) with which Hutchison had personal contact during the last 24 months of her employment with Hosts; 2) for which Hutchison performed project-specific services within the last 24 months of her employment with Hosts; or 3) about which Hutchison learned confidential information which remains confidential. "Event Services" are defined in the BPA as the "business of meeting planning, event design and management, destination management

- 4 -

services and membership and referrals within a global alliance of members across a wide spectrum of industries and organizations." *See* BPA at "Explanatory Statement." Thus, outside of her duties as Hosts' Director of Sales, Hutchison was prohibited from soliciting or serving Hosts' clients and prospective clients, which would include virtually all of the clients that District Venues diverted to itself.

11.     The BPA also prohibits Hutchison during the period of her employment and for one year thereafter from directly or indirectly soliciting or encouraging any Hosts' contractors to stop providing services to Hosts, to reduce the amount of services provided to Hosts, or to provide Event Services to others. BPA at ¶3.

12.     The BPA further restricts Hutchison's use of confidential information (defined in the BPA as "all information about Hosts or its clients or prospective clients that is not properly in the public domain, including but not limited to trade secrets."). BPA at ¶1.

B.     Hutchison Secures a Contractual and/or Agency Relationship between District Venues and the District Wharf While Purporting to Solicit Work for Hosts.

13.     The District Wharf (hereinafter, the "Wharf") is a massive and transformative mixed-use development of commercial and residential properties along the Potomac River waterfront in Washington, D.C.   The first phase, a mile-long development commonly known as "The Wharf," opened in Fall 2017, and the second and final phase is scheduled to be completed in 2022 with an additional half-mile of development.   The Wharf includes outdoor spaces controlled by the District Wharf Community Association that are offered to the public for private event rentals, including the spaces known as the Transit Pier, the District Pier, the Recreation Pier, and 7th Street Park. Another space at the Wharf, known as the Dockmaster Building, initially was operated by the District Wharf Community Association.

14.     In November 2016, Hutchison arranged for Erica Gibbons (Regional President for Hosts' Washington/Baltimore and Chicago Office) and Hutchison to meet with Bob Rubenkonig, a representative of the Wharf with responsibility for retail leasing and services, to walk the Wharf site prior to completion of construction and to discuss partnership and consultancy opportunities. Hutchison continued those discussions with Mr. Rubenkonig through the Winter of 2016 and the Spring of 2017,

and reported to Hosts that she was actively pursuing a business relationship with the Wharf on behalf of Hosts. Hutchison's reports were lies. Hutchison secretly was establishing District Venues to be an intermediary between the Wharf and Hosts, with the intent to earn money from both entities as soon as the Wharf opened for event rentals.

15.     Unbeknownst to Hosts, as early as January of 2017, even before District Venues was formed as a limited liability company on April 25, 2017, Hutchison began soliciting the Wharf's business on behalf of District Venues, Hutchison, and/or Villagomez.

16.     On January 26, 2017, Hutchison, referring to herself as the "Owner" of District Venues, sent a proposal for a partnership to Mr. Rubenkonig, outlining venue marketing and management services to be performed by herself and "her company" (District Venues) in two phases. According to the proposal, Phase One would begin in March 2017 and conclude June 30, 2017, and Phase Two would extend from July 2017 through a five year minimum term with a ten year maximum term. *See* District Venues proposal attached as Exhibit 3.

17.     On March 22, 2017, Hutchison met with Mr. Rubenkonig and Matt Jahromi to discuss finalizing the agreement between the Wharf and District Venues. Mr. Jahromi is Villagomez's business partner at several businesses owned and/or operated by Villagomez that provide marina-related services at the Wharf. On information and belief, Mr. Jahromi attended this meeting at the request and with the knowledge of Villagomez, who understood the dual and wrongful role his wife was playing in these negotiations. On information and belief, Villagomez knew his wife owed contractual and legal duties to Hosts as her employer, but Villagomez encouraged and/or consented to his wife's dual role because he stood to personally gain from the arrangement. In that meeting, Hutchison shared with Mr. Rubenkonig estimates that District Venues would produce annual sales through a contract with the Wharf (through venue rentals) of over $1,000,000 in its first full year alone.

18.     On or about March 29, 2017, Hutchison prepared a contract between District Venues and the Wharf, in which District Venues would provide three phases of service to the Wharf. *See* March 29, 2017 letter agreement (the "District Venues Partnership Agreement"), attached as Exhibit 4, which Hutchison prepared by copying and altering a Hosts' business agreement. Phases One and Two related

- 6 -

respectively to consultation services and facilities management services which District Venues would provide to the Wharf. Under the District Venues Partnership Agreement, District Venues' compensation for Phase One was to vary depending on services provided, but set a minimum of $7,000 per month. Phase Two required a minimum annual payment to District Venues of $108,500, with annual increases and a commission structure for all venue bookings. Hosts was fully capable of providing all of these kinds of services to the Wharf, and the District Venues Partnership Agreement was exactly the type of corporate opportunity that Hosts hired Hutchison to pursue on Hosts' behalf.

19.     Phase Three of the District Venues Partnership Agreement was entitled "Corporate Planning Partner." Under Phase Three, District Venues was to secure and select Hosts as the "exclusive planning partner" to provide event planning services, with the understanding that District Venues and the Wharf would receive commissions from Hosts for all event referrals. By structuring Phase Three of the relationship between District Venues and the Wharf in this manner, Hutchison guaranteed that the entity she and her husband owned and controlled would receive commission revenue from the Wharf and from Hosts, as well as commissions that Hutchison would earn as a Hosts employee on events that were referred to and performed by Hosts at the Wharf. In essence, Hutchison was guaranteeing a revenue stream from two or potentially three sides of any event business that Hutchison secured for the Wharf.

20.     At the same time that Hutchison was negotiating with the Wharf on behalf of District Venues, Hosts' attempts to secure contracts directly with the Wharf were stalled, due to start-up and construction issues according to Hutchison. Thus, even as Hutchison had secured a comprehensive contractual relationship with the Wharf for District Venues, she informed Hosts that she could not secure the same arrangement for her employer.

21.     While negotiating with the Wharf on behalf of District Venues, Hutchison told and/or led Mr. Rubenkonig to believe that Hutchison was a former employee of Hosts and that Hosts consented to Hutchison's creation of District Venues.

22.     While negotiating with the Wharf on behalf of District Venues, Hutchison concealed from Mr. Rubenkonig the fact that Hutchison and Villagomez (who operated marine businesses at the Wharf and therefore was known to Mr. Rubenkonig) were married to each other.

- 7 -

C.    Hutchison Begins to Operate District Venues and Conceals Her Fraudulent Scheme

23.    Subsequent to negotiating the District Venues Partnership Agreement, Hutchison and Villagomez began taking steps to make District Venues operational. On April 24, 2017, Hutchison hired an individual by the name of Tori Hamed as a District Venues employee, and in connection with her hiring, Hutchison had Ms. Hamed sign a District Venues employee handbook which Hutchison created by copying Hosts' employee handbook. On April 25, 2017, District Venues was formed as a District of Columbia limited liability company, and the District of Columbia Department of Consumer and Regulatory Affairs online database indicates that Villagomez was the organizer and registered agent.

24.    On May 8, 2017, Hutchison issued two District Venues invoices to the Wharf seeking payment of $21,000 for consultation services for April, May and June 2017. Copies of these invoices are attached to this Complaint as Exhibit 5. The invoice form was copied from Hosts' invoice template, with a District Venues logo added. The payment instructions on the invoices, copied below, instruct the Wharf to make payment directly to Hutchison at Hutchison's home address:

> "PLEASE REMIT UPON RECEIPT TO:
> Checks Payable to:  Taylor Hutchison
> 2221 Stokes Lane
> Alexandria, VA 22307"

25.    Also on May 8, 2017, Hutchison issued a District Venues invoice to the Wharf seeking payment of $162,750. A copy of the invoice is attached as Exhibit 6. The invoice is designated "FTP First Invoice," presumably for "Full Time Partnership Invoice," and seeks payment pursuant to the District Venues Partnership Agreement. The invoice form was copied from Hosts' invoice template, with a District Venues logo added.   The payment instruction on the invoice, copied below, instructs the Wharf to make payment to District Venues at Hutchison's home address:

> "PLEASE REMIT UPON RECEIPT TO:
> Checks Payable to:  District Venues
> 2221 Stokes Lane
> Alexandria, VA 22307"

26.    On information and belief, Hutchison utilized Hosts' vendors for projects District Venues performed at the Wharf and elsewhere, in contravention of the BPA.

27.     By July 2017, the Wharf's website was operational and included a link for event space inquiries.  At that time, Hosts, through Hosts' employee Hillary Patriquin, reached out to the Wharf again to inquire about availability for space rentals and received no reply.  Ms. Patriquin then reached out to the Anthem (a venue at the Wharf) for a contact at the Wharf and was given the email address thutchison@thewharf.com.  Confused by the email address, Ms. Patriquin forwarded the email to Ms. Gibbons, who contacted Hutchison and asked Hutchison to explain its meaning since Hutchison was a full-time Hosts employee.  In an attempt to hide her dual and conflicting roles for Hosts and District Venues, Hutchison claimed that she was unaware of this email address and stated that the email address was set up erroneously due to her helping with some of her husband's business ventures at the Wharf.

28.     Remarkably, in order to distract Ms. Gibbons from her concerns about the email address, Hutchison introduced Ms. Gibbons to Ms. Hamed who, Hutchison claimed, was a new employee of the Wharf and who Hutchison claimed not to have met yet.  Hutchison encouraged Ms. Gibbons to pursue the Hosts' relationship directly with Ms. Hamed while Hutchison went out on maternity leave.

29.     During August and September 2017, Ms. Gibbons and other employees of Hosts met periodically with Ms. Hamed in pursuit of business from the Wharf based on Hutchison's representation that Ms. Hamed could award or direct such work, and that Ms. Hamed worked for the Wharf. Unbeknownst to Ms. Gibbons, however, Ms. Hamed was not at that time or any other time working for the Wharf; instead, Ms. Hamed was working for District Venues under the direction of Hutchison. Sometime in September 2017, Ms. Hamed informed Ms. Gibbons that the Wharf would not be able to execute a final event-planning contract with Hosts until closer to the opening of the Wharf development, as the construction and community events were the Wharf's primary focus.  On October 3, 2017, Hutchison returned to Hosts from maternity leave.

30.     Shortly thereafter, Hutchison and District Venues began to sell and execute the first of many private corporate events at the Wharf, including a four-day event for Apple at the Dockmaster Building.  Hutchison did not disclose these sales to Hosts.  Hosts has learned that District Venues conducted at least five such events in 2017.

- 9 -

31.     On information and belief, District Venues has conducted at least 30 events in 2018, and many more are planned and contracted for 2019, with only a handful of these events being referred to Hosts. For each of these events, District Venues collected or will collect commissions from the Wharf, commissions from vendors hired to produce the events, and, with respect to any events referred to and performed by Hosts, commissions from Hosts. Each of the events produced or contracted for by District Venues but not referred to Hosts is an event that Hosts is fully capable of producing, and the diversion of this work from Hosts to District Venues constitutes theft and diversion of a corporate opportunity from Hosts. Hosts hired Hutchison as its Director of Sales to bring to Hosts precisely these events, and instead she diverted many of them to District Venues to perform.

D.      **Hutchison Doubles Down On Her Fraud By Having Ms. Hamed Sign a Contract Ostensibly Between Hosts and the Wharf and by Taking Measures to Conceal the Fraud.**

32.     Throughout the Fall of 2017 and into 2018, Hutchison and Hamed continued to perpetrate the fraud on Hosts that Hamed was a representative of the Wharf and that District Venues was either a division of the Wharf or an unrelated third party, and that no relationship existed between Hutchison and Hamed. Hutchison and Hamed worked diligently at concealing the true nature of their relationship from Hosts. On many occasions, Hutchison gave explicit instructions to Hamed to create and alter documentation, and arrange activities, so as to conceal Hutchison's role with District Venues. For example:

a.      On January 10, 2018, Hutchison, writing from the "Event Spaces" email address, wrote to Hamed and said "Can you send this to the hosts DC email? **Please ensure my name is no where to be found, thanks!**" A copy of the email exchange culminating in this instruction to Hamed is attached as Exhibit 7-1. In this email exchange, a potential event client wrote to the public-facing email address info@wharfdc.com to inquire about theater space with certain capabilities for no more than 150 guests. That inquiry was forwarded to the email address PrivateEvents@wharfdc.com, which was an email address monitored by Hutchison and Hamed. Hutchison responded to the inquiry by stating that another venue, the Anthem (a venue at the Wharf), is going to be the only theater space. The potential client responds by saying

- 10 -

"Thanks, I already spoke with them, it's going to be too big for what we do." To that, Hutchison, then writing over her own signature from her tchutchison@wharfdc.com email address, responds "Would you like to me introduce you to our event partner, Hosts DC, who would be able to assist you in finding your space?" Thus, rather than directing the potential client to Hosts in the first place so that Hosts could identify a suitable venue and perform the event, Hutchison directed the potential client away from Hosts, to another venue which, if suitable, could have been booked by District Venues instead of Hosts. Only when that did not work did Hutchison offer to direct the potential client to Hosts.

b.     On January 23, 2018, Hutchison wrote an email from her tchutchison@wharfdc.com email address to Ms. Hamed, instructing Ms. Hamed to set up a walk-through for a potential client and invite Hosts. However, Hutchison directed Ms. Hamed: "**Please remove ANY thing with my name/info**." A copy of this email is attached as Exhibit 7-2.

c.     On January 23, 2018, Hutchison forwarded to Ms. Hamed an inquiry from a potential client that had been sent to the info@wharfdc.com email address then forwarded to the eventspaces@wharfdc.com email address. Hutchison's instructions to Ms. Hamed were for Hamed to respond to the inquiry with availability and rates/photos and intro to Hosts. However, Hutchison then said "**Remove anything related to me**." A copy of that email is attached as Exhibit 7-3.

d.     On February 6, 2018, Hutchison, writing from her thutchison@wharfdc.com email address, instructed Ms. Hamed to attend a marketing event at the Wharf, but that no one from Hosts should be invited. A copy of that email is attached as Exhibit 7-4.

e.     On April 19, 2018, Hutchison wrote to Ms. Hamed and stated: "**Please be sure to take me off all this correspondence since it's a Hosts event**." A copy of that email is attached as Exhibit 7-5.

(bold added).

33.     On October 18, 2017, Ms. Gibbons and Hutchison met with Ms. Hamed to discuss the specifics of the Hosts and the Wharf's corporate event partnership.   Because of Hutchison's misrepresentations about Ms. Hamed's role, Ms. Gibbons believed in that meeting that Ms. Hamed was employed by the Wharf.   Hutchison and Ms. Hamed, of course, knew that Ms. Gibbon's belief was wrong.   During that meeting, Ms. Gibbons specifically asked Ms. Hamed and Hutchison if Mr. Rubenkonig would be a signatory on the contract and Ms. Hamed said that no, she was the authorized party to sign on behalf of the Wharf.   The contract that was presented by Hutchison and Ms. Hamed to Ms. Gibbons, titled Preferred Partner Agreement, is confusing as to the actual parties.   It describes the contract as being between Hosts and "District Venues," (with the LLC designation omitted or removed) and the first "WHEREAS" clause states that District Venues "operates the Wharf Community Association Private Event Spaces."   The signature lines indicate that Ms. Hamed would execute the contract on behalf of "District Venues for the Wharf Community Association."

34.     About a month later, on or about November 17, 2017, the Preferred Partner Agreement was signed by Ms. Hamed ostensibly for the Wharf, and by Hutchison ostensibly for Hosts, producing a contract that on its face appeared to be an arm's length agreement between two unrelated parties.   A copy of the signed Preferred Partner Agreement is attached as Exhibit 8.   In reality, both signatories to the Preferred Partner Agreement were acting on behalf of District Venues – Ms. Hamed being an employee of District Venues and Hutchison being an owner of District Venues.

35.     At or around the time that the Preferred Partner Agreement was signed, Ms. Gibbons asked Hutchison to explain the discrepancies in the names on the Preferred Partner Agreement, and was told that the name confusion was caused because the event venues are operating under a different division focused on venue spaces only, while the District Wharf Community Association handles public events for the development, which was reiterated at the time of contract signature by Ms. Hamed. This information was not accurate, and Hutchison's statements were intended to assure Ms. Gibbons that Hosts was in fact entering into a contract with the Wharf, with which Hosts had been seeking to partner for some time. Unbeknownst to Ms. Gibbons and Hosts, Hosts was actually entering into a contract with District Venues, which had positioned itself as a conduit to funnel some event-planning work to Hosts

- 12 -

(for a fee) and to divert other event-planning work. At no time prior to entering into the Preferred Partner Agreement did Hutchison reveal that she and her husband were the owners and operators of District Venues, or that District Venues had already begun performing event-planning work at the Wharf.

36.     Following execution of the Preferred Partner Agreement, Hosts began to receive some event-planning engagements at the Wharf, and began to pay commissions on those events. On July 15, 2018, Hutchison generated an invoice for $17,662 using the District Wharf logo, which made the invoice look like it was issued by or on behalf of the Wharf. The invoicing party is identified as "District Venues for District Wharf" and the invoice is addressed to "Taylor Hutchison Hosts DC". The invoice is for commission for work performed by Hosts during the second quarter of 2018. The payment instructions on the invoice instruct Hosts to pay by wire transfer to a Bank of America account in the name of District Venues, LLC. A copy of that invoice, with the bank account number partially redacted, is attached as Exhibit 9. Even though Hutchison generated the invoice and submitted it to Hosts, Hutchison signed the bottom of the invoice to approve the invoice for payment by Hosts' accounting department. Hosts' accounting department, not knowing at that time that Hutchison was an owner and operator of District Venues, paid the invoice.

37.     When District Venues did refer event-planning work to Hosts pursuant to the Preferred Partner Agreement, Hutchison also personally received commissions from Hosts, in her capacity as an employee of Hosts, for procuring the work.

E.      The Wharf Relationship Deteriorates.

38.     In July 2018, Ms. Hamed quit working at District Venues and as a result Mr. Rubenkonig began to express unhappiness with District Venues for not performing its partnership obligations. Simultaneously, Hosts' referrals for event planning at the Wharf began to slow down. Around this time, Hosts was informed that Ms. Hamed was no longer "the venue manager" at the Wharf. In an effort to sustain her web of deceptions, Hutchison feigned surprise over this news and expressed frustration to her team at Hosts with the lack of communication from the Wharf.

39.     Between July and August 2018, in response to instances when Hosts did not receive its security deposits back from the Wharf, Hosts began contacting the Wharf's private events email address directly.   In this same timeframe, Ms. Gibbons asked Hutchison to set up a meeting with Mr. Rubenkonig in order to address vendor questions about space availability.   Hutchison informed Ms. Gibbons that Mr. Rubenkonig was no longer involved in the relationship and that she (Hutchison) would consult with her husband, Villagomez, to get insight into who at the Wharf Hosts should be contacting.

40.     At the same time, District Venues and Hutchison were being pressured by the Wharf to perform District Venues' contractual obligations.  In an effort to keep up the appearance to Hosts that the Wharf was running smoothly, Hutchison informed Hosts (and Hosts' affiliated vendors) that a person by the name of Gressy Cuadra was the Wharf's replacement for Ms. Hamed.  In order to keep up the appearance to the Wharf that District Venues was running smoothly, Hutchison informed Mr. Rubenkonig  that Ms. Cuadra was District Venues' new hire.  In actuality, Ms. Cuadra was the nanny to the children of Hutchison and Villagomez.

41.     In Mid-September 2018, the Wharf hired an employee by the name of Jennifer Currie to manage event inquiries and fill the gaps as District Venues was not performing its contract obligations. In this timeframe, Meredith Greene (a Hosts' new business development hire) – unaware of Hutchison's deception - invited Hutchison to join partnership meetings with Ms. Currie on multiple occasions. Hutchison declined to attend those meetings, under the pretext that the Wharf had no recent business for Hosts.  Hutchison also informed Hosts that she (Hutchison) wanted Ms. Greene to be the "Face" of the partnership with the Wharf.  Hutchison made this request because she knew that if she attended meetings with Ms. Currie and Ms. Greene, her fraud would be exposed.

F.     Hutchison Partially Confesses, Blames Ms. Hamed and Villagomez After Destroying Her Emails.

42.     In October 2018, Hutchison's lies and fraudulent scheme begin to crumble and collapse. Ms. Currie and Ms. Greene began to suspect that Hutchison had not been honest with either the Wharf or Hosts about her role in the event-planning operations.  These suspicions culminated in an October 25, 2018 meeting among Hutchison, Ms. Gibbons, and Hosts' ultimate owner.  In that meeting, Hutchison

- 14 -

was asked direct questions about the nature of District Venues, whether Hutchison had ever pitched a plan for a partnership between the Wharf and District Venues, and whether District Venues had performed any event planning directly for or at the Wharf. Hutchison conceded that the relationship between and among Hosts, the Wharf and District Venues was not what Hutchison had lead Hosts to believe it was, but attempted to blame Ms. Hamed and Villagomez for the fraudulent scheme. For example, Hutchison claimed that her husband Villagomez owned District Venues by himself, and that she did not discover this fact until a few days before the meeting. She also said that Villagomez owned several other businesses that operate in the marina at the Wharf and she suggested that this fact had something to do with the fraudulent scheme. Hutchison also stated that Ms. Hamed prepared the contract with Hosts, and that Ms. Hamed fraudulently signed that contract on behalf of the Wharf. Hutchison also denied that District Venues had performed event-planning work for the Wharf without Hosts' participation. At the end of the meeting, Hosts terminated Hutchison's employment. Before leaving the building, Hutchison asked if she could access her computer calendar for a personal reason. Hosts denied her request.

43.     Subsequent to the October 25, 2018 meeting, Hosts discovered that shortly prior to the meeting, Hutchison had deleted numerous emails from her Hosts' electronic mailbox. Hosts was able to recover a substantial number of those emails from its server.

44.     Hosts has investigated the matter, including through discussions with Mr. Rubenkonig, and learned, among other things, that 1) District Venues did supply event-planning services directly at or to the Wharf without Hosts' participation; 2) the Wharf compensated District Venues directly for that work; 3) Ms. Hamed was not an employee of the Wharf, and did not have authority to enter into the Preferred Partnership Agreement on behalf of the Wharf; 4) Ms. Cuadra was never an employee of the Wharf; and 5) the Wharf was unaware that Hutchison was an employee of Hosts and is aware of no efforts made by Hutchison to secure event-planning work for Hosts, other than as described in the District Venues Partnership Agreement.

## COUNT ONE – BREACH OF DUTY OF LOYALTY
### (HUTCHISON ONLY)

45.     Hosts incorporates by reference the allegations contained in paragraphs 1 through 44 as if fully set forth herein.

46.     As Hosts' Director of Sales for its Washington/Baltimore region, Hutchison owed a duty of loyalty to Hosts to act in the best interests of Hosts at all times during her employment, and to avoid any conflicts of interest in performing her duties as an employee.  This duty required Hutchison to pursue and refer to Hosts all event-planning business opportunities that Hutchison generated or became aware of while employed by Hosts, and this duty also prohibited Hutchison from taking actions that were fraudulent or contrary to Hosts' best interests, including taking actions that would divert event-planning work away from Hosts to a competitor, particularly a competitor like District Venues, which is owned and/or operated by Hutchison and her husband Villagomez.

47.     Hutchison breached her duty of loyalty to Hosts by, among other things, 1) soliciting the Wharf for the provision of event-planning and related services to be supplied by District Venues; 2) misrepresenting to Hosts that it could not secure a contract directly with the Wharf when in reality Hutchison had secured such an agreement for District Venues; 3) misrepresenting the nature of her role with District Venues, and taking extraordinary steps to hide her fraudulent scheme from Hosts; 4) accepting salary, benefits and commissions from Hosts when she was not working in Hosts' best interests, and not devoting all of her work time to the pursuit of Hosts' best interests; 5) engaging Hosts' vendors on behalf of District Venues in connection with event-planning services provided by District Venues; 6) using confidential information Hutchison obtained regarding the Wharf and its event planning needs while employed by Hosts in order to benefit District Venues; 7) using Hosts' employee handbook, business agreements, and invoice forms for the purpose of running a business that competes with and diverts business from Hosts; and 8) entering into the Preferred Partnership Agreement on behalf of Hosts without disclosing the nature of District Venues' contractual arrangement with the Wharf, and when the Preferred Partnership Agreement was not in the best interests of Hosts.  Hutchison took all of these actions with actual malice towards Hosts, with the intent to injure Hosts.

48.     Hosts has suffered damages as a result of Hutchison's breach of her duty of loyalty to Hosts which exceed $75,000, exclusive of attorneys' fees, interests and costs. Hosts also seeks punitive damages in Count One in an amount to be determined by this Court.

## COUNT TWO – BREACH OF THE BUSINESS PROTECTION AGREEMENT (HUTCHISON ONLY)

49.     Host incorporates by reference the allegation contained in paragraphs 1 through 48 as if fully set forth herein.

50.     Other than activities on behalf of Hosts, the BPA prohibited Hutchison from directly or indirectly soliciting any Hosts' clients or prospective clients for the provision of Event Services, or providing Event Services to any Hosts' client or respective client during the course of her employment with Hosts, and for one year after her employment.  The BPA also prohibits Hutchison during the period of her employment and for one year thereafter from directly or indirectly soliciting or encouraging any Hosts' contractor to stop providing services to Hosts, to reduce the amount of services provided to Hosts, or to provide Event Services to others.  BPA at ¶3.  Finally, the BPA further restricts Hutchison's use of confidential information (defined in the BPA as "all information about Hosts or its clients or prospective clients that is not properly in the public domain, including but not limited to trade secrets."). BPA at ¶1.

51.     Hutchison breached the BPA by, among other things, 1) soliciting the Wharf for the provision of event-planning services to be supplied by District Venues; 2) soliciting prospective clients who made inquiry about holding events at the Wharf  for the provision of event-planning services to be provided by District Venues, and providing event-planning services for some of such prospective clients, and 3) engaging Hosts' vendors on behalf of District Venues in connection with event-planning services provided by District Venues; 4) using confidential information and business documents of Hosts, including pricing formulas, contract forms and invoice forms, to compete with Hosts; and 5) using confidential information regarding the Wharf and its event planning needs while employed by Hosts in order to divert business from Hosts.

52.     Hosts has suffered damages as a result of Hutchison's breach  of the BPA which exceed $75,000, exclusive of attorneys' fees, interests and costs.

- 17 -

<u>COUNT THREE - TORTIOUS INTERFERENCE WITH PROSPECTIVE ADVANTAGE</u>
<u>(ALL DEFENDANTS)</u>

53.     Host incorporates by reference the allegation contained in paragraphs 1 through 52 as if fully set forth herein.

54.     Defendants, through their deliberate and deceitful actions, intentionally and willfully interfered with Hosts' prospective business relationship with the Wharf and other prospective clients, by among other things, 1) the solicitation by Hutchison and District Venues, with Villagomez's full knowledge and encouragement, of the Wharf and other prospective clients for the provision of event-planning and related services to be supplied by District Venues, and the actual provision of such event-planning services at the Wharf and other venues; 2) the misrepresentations to Hosts, with Villagomez's full knowledge and encouragement, that Hosts could not secure a contract directly with the Wharf when in reality Hutchison had secured such an agreement for District Venues; and 3) the misrepresentation, with Villagomez's full knowledge encouragement, of the nature of Hutchison's role with District Venues, including the extraordinary steps to hide the fraudulent scheme.

55.     Defendants' actions were calculated to cause damage to Hosts in Hosts' lawful business. Specifically, Defendants took these actions to divert event-planning business services that Hosts sought to provide at the Wharf and in other venues to District Venues in contravention of Hutchison's contractual and common law fiduciary duties (including the duty of loyalty) to Hosts as the Director of Sales for Hosts' Washington/Baltimore region. Defendants' actions were taken with actual malice and for the unlawful purpose of damaging Hosts, and there is no justifiable right or cause on the part of Defendants.

56.     Hosts has suffered damages as a result of Defendants' conduct which exceed $75,000, exclusive of attorneys' fees, interests and costs. Hosts also seeks punitive damages in Count Three in an amount to be determined by this Court.

6549625 4 35482/139325 12/03/2018

## COUNT FOUR – INTENTIONAL MISREPRESENTATION
## (HUTCHISON AND DISTRICT VENUES)

57.    Host incorporates by reference the allegation contained in paragraphs 1 through 56 as if fully set forth herein.

58.    Hutchison, and through Hutchison, District Venues, have made a number of false representations to Hosts during the course of Hutchison's employment with Hosts.    These misrepresentations include: 1) statements disguising the fact that Hutchison owns and/or controls District Venues, an entity which competes with Hosts for event-planning work; 2) statements that led Hosts to believe that Hutchison was working to secure event-planning work exclusively for Hosts, when in fact Hutchison was securing that work for District Venues; 3) statements in 2016 that led Hosts to believe it could not obtain event-planning work directly from the Wharf; 4) statements in meetings with Hosts misrepresenting the nature of Ms. Hamed's role, including statements that Ms. Hamed was a representative of the Wharf; 5) statements that Ms. Cuadra, the nanny of Hutchison and Villagomez' children, was an employee of the Wharf; and 6) statements that led Hosts to believe the Preferred Partnership Agreement it signed was an agreement with the Wharf, when in reality it was an agreement with District Venues.

59.    Hutchison and District Venues knew when they made these statements that they were false, or they made these statements with such reckless disregard for their veracity that knowledge of their falsity can be imputed to Hutchison and District Venues. These Defendants made these false statements with actual malice for the express purpose of defrauding and injuring Hosts, and Hosts reasonably relied upon these statements with justification.

60.    Hosts suffered damages as a result of Hutchison's and District Venues' intentional misrepresentations which exceed $75,000, exclusive of attorneys' fees, interests and costs.  Hosts also seeks punitive damages in Count Four in an amount to be determined by this Court.

## COUNT FIVE – NEGLIGENT MISREPRESENTATION
## ((HUTCHISON AND DISTRICT VENUES)

61.    Host incorporates by reference the allegation contained in paragraphs 1 through 60 as if fully set forth herein.

62.     Hutchison, and through Hutchison, District Venues, have made a number of false representations to Hosts during the course of Hutchison's employment with Hosts.   These misrepresentations include: 1) statements disguising the fact that Hutchison owns and/or controls District Venues, an entity which competes with Hosts for event-planning work and diverts event- planning work from Hosts; 2) statements that led Hosts to believe that Hutchison was working to secure event-planning work for Hosts, when in fact Hutchison was securing that work for District Venues; 3) statements in 2016 that led Hosts to believe it could not obtain event-planning work directly from the Wharf; 4) statements in meetings with Hosts misrepresenting the nature of Ms. Hamed's role, including statements that Ms. Hamed was a representative of the Wharf; 5) statements that Ms. Cuadra, the nanny of Hutchison and Villagomez' children, was an employee of the Wharf; and 6) statements that led Hosts to believe the Preferred Partnership Agreement it signed was an agreement with the Wharf, when in reality it was an agreement with District Venues.

63.     Hutchison, by virtue of her employment by Hosts, and District Venues, by virtue of its contractual relationship with Hosts through the Preferred Partner Program, owed a duty of care to Hosts, and these defendants negligently made the statements described in this Complaint to Hosts, with the intention that Hosts would act on those statements and with knowledge that Hosts would rely on those statements to its detriment.

64.     Hosts in fact did rely on Defendants' statements and justifiably took action in reliance on those statements.

65.     Hosts has suffered damages as a result of Hutchison's and District Venues' negligent misrepresentations which exceed $75,000, exclusive of attorneys' fees, interests and costs.

## COUNT SIX – FRAUDULENT CONCEALMENT
### (HUTCHISON AND DISTRICT VENUES)

66.     Hosts incorporates by reference the allegation contained in paragraphs 1 through 65 as if fully set forth herein.

67.     Hutchison, by virtue of her employment with Hosts, and District Venues, by virtue of its contractual relationship with Hosts through the Preferred Partnership Agreement, owed a duty to

disclose material facts to Hosts relating to Hosts' event-planning business and its attempts to secure event-planning work from the Wharf.  With the specific intent to deceive Hosts, and knowing that Hosts would act differently if it knew the truth of these matters, these Defendants fraudulently concealed, among other things, the true relationship between District Venues and the Wharf, the lack of an employment relationship between the Wharf and Ms. Hamed and Ms. Cuadra, the fact that District Venues was providing event-planning services at the Wharf and the fact that Hutchison was acting for the benefit of District Venues and herself in dealing with the Wharf, and not in the best interests of Hosts.  Hutchison and District Venues concealed this information from Hosts with actual malice and with the intent to injure Hosts.

68.     Hosts acted in justified reliance upon the concealment by, among other things, continuing to employ Hutchison and entering into the Preferred Partnership Agreement.

69.     Hosts has suffered damages as a result of Hutchison's and District Venues' fraudulent concealment which exceed $75,000, exclusive of attorneys' fees, interests and costs.  Hosts also seeks punitive damages in Count Six in an amount to be determined by this Court.

## COUNT SEVEN – CIVIL CONSPIRACY
### (ALL DEFENDANTS)

70.     Host incorporates by reference the allegation contained in paragraphs 1 through 69 as if fully set forth herein.

71.     Defendants Hutchison, Villagomez and (through the actions of Hutchison and Villagomez), District Venues, agreed to participate in the unlawful acts described above, including the various breaches by Hutchison of her contractual duties and duties of loyalty to Hosts, the tortious interference with Hosts' prospective advantages by all Defendants and the fraudulent misrepresentations and concealments by Hutchison and District Venues.  Defendants participated in these acts pursuant to a common scheme to injure Hosts and benefit themselves, and by doing so caused injury to Hosts.  Specifically, Defendants set in motion a scheme to divert event-planning work away from Hosts and toward District Venues, the entity owned and controlled by Hutchison and Villagomez.  Additionally, with respect to work that was referred to Hosts pursuant to the Preferred Partner Agreement, Defendants

- 21 -

ensured that District Venues acted as an intermediary for that work, allowing District Venues to earn commissions on both sides of Hosts' services, as well as allowing Hutchison to be paid commissions by Hosts for securing that work for Hosts.

72.     Defendants took these actions with actual malice and for the purpose of harming Hosts. Hosts has suffered damages as a result of Hutchison's conduct which exceed $75,000, exclusive of attorneys' fees, interests and costs.  Hosts also seeks punitive damages in Count Seven in an amount to be determined by this Court.

## COUNT EIGHT – UNJUST ENRICHMENT
## (HUTCHISON)

73.     Hosts incorporates by reference the allegation contained in paragraphs 1 through 72 as if fully set forth herein.

74.     Hosts conferred substantial benefits upon Hutchison in the form of salary, commission payments and benefits in exchange for her employment at the company.  Hutchison understood that Hosts conferred these benefits on her in exchange for her work as a Hosts employee, which included taking actions that were in the best interest of Hosts, and avoiding conflicts of interest that could harm Hosts.

75.     Hutchison's retention of these benefits, given the fraudulent actions described in this Complaint, would be inequitable, and this Court should order that Hutchison return the value of those benefits to Hosts.

\*          \*          \*

WHEREFORE, Plaintiff Hosts Destination Services, LLC, by its attorneys, hereby requests that this Court award it the following relief against Defendants Taylor Hutchison (a/k/a Christian Taylor Hutchison Villagomez), Patrick Anthony Villagomez and District Venues, LLC:

A)      Damages in excess of Seventy-Five Thousand Dollars ($75,000), to include 1) salary, commissions and benefits paid by Hosts to Hutchison commencing as of the date that this Court determines Hutchison began to breach her duties to Hosts, including but not limited to commissions for sales to or at the Wharf; 2) commissions paid by Hosts to District Venues or the Wharf for event-planning referrals; 3) the value of Hosts' resources Hutchison used to generate business for District Venues, including the value of business documents and information and other property Hutchison misappropriated from Hosts; 4) the value of client business diverted to District Venues in years 2017-present, regardless of the venue in which the events were performed; 5) the value of client business diverted to Hutchison other than through District Venues in years 2017-present, regardless of the venue in which the events were performed; 6) the loss of Hosts' revenue that Hutchison reasonably would have generated for Hosts had she been working full-time in the interests of Hosts, instead of in the interests of herself, her husband and District Venues; and 7) damage and injury to Hosts' business reputation caused by Hutchison's fraudulent scheme.

B)      Punitive Damages in an amount to be determined by this Court;

C)      Equitable remedies including permanent injunctive relief ordering Defendants as follows:

1)      <u>Cease and Desist</u> – Hutchison shall cease and desist from all violations of the Business Protection Agreement, including but not limited to using Hosts' confidential business documents and information, soliciting Hosts' clients and prospective clients for the provision of Event Services, and providing Event Services to Hosts' clients and prospective clients; and all Defendants shall cease and desist from conspiring to engage in any of the conduct described in Counts One through Eight.

2)      <u>Accounting</u> - Defendants shall produce an accounting identifying each inquiry from a potential event client that District Venues failed to refer to Hosts, including the date of the inquiry, the name of the inquirer, and the type of event inquired about; and with respect to each such inquiry that ripened into a contract or event in which Hutchison, Villagomez or District Venues played any role, including a summary showing the name of the client, the date and location of the event, and all revenues and expenses associated with the event including commissions, rebates, and other payments

- 23 -

and incentives paid to any party. Defendants shall also produce an accounting of all payments received by any Defendant from The District Wharf Community Association, whether for consulting services or otherwise, or from others for event-planning services during Hutchison's employment by Hosts.

       3)    <u>Disgorgement</u> – Defendants shall disgorge and pay over to Hosts all money, gross margin, profit, net income, commissions, rebates, and other payments and incentives received by any of them in connection with any event for which any Defendant entered into a contract or played any role during Hutchison's employment by Hosts, whether or not such event was performed by Hosts, the Defendants, or by others. Defendants shall further disgorge and pay over to Hosts all payments received by any of the Defendants from The Wharf Community Association, whether for consulting services or otherwise, including but not limited to all payments made pursuant to the District Venues Partnership Agreement.

       4)    <u>Assignment of Contracts</u> - Defendants shall offer to assign to Hosts all contracts entered into by Defendants during Hutchison's employment by Hosts for events to be held 30 days or more after entry of the Court's Order in this action. With respect to each contract so assigned to Hosts, the Defendants shall provide Hosts with all documentation pertaining to the event and shall cooperate with Hosts for the purpose of transitioning the client to Hosts.

    D)    An award of pre-and post-judgment interest, attorneys' fees and costs; and

    E)    Such other and further relief the Court deems necessary or appropriate.

Date: December 3, 2018

George F. Ritchie
Federal Bar No.: MD 22408
Gordon Feinblatt LLC
The Garrett Building
233 East Redwood Street
Baltimore, Maryland 21202
410-576-4131
410-576-4269 (fax)
gritchie@gfrlaw.com

*Attorney for Plaintiff Hosts Destination Services, LLC*